# FILED

MAR 11 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

ORDERED PUBLISHED

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br><br>WALLACE EUGENE FRANCIS,<br>TRACY DANIELLE FRANCIS,<br><br>　　　　　Debtors.<br>_____<br><br>WALLACE EUGENE FRANCIS,<br><br>　　　　　Appellant,<br><br>v.<br><br>DEBRA LYN WALLACE,<br><br>　　　　　Appellee.<br>_____ | BAP No.　NC-13-1300-DJuKi<br><br>Bk. No.　12-11910<br><br>Adv. No.　13-01040<br><br><br><br><br><br><br><br>**O P I N I O N** |

Argued and Submitted on February 20, 2014
at San Francisco, CA

Filed - March 11, 2014

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Alan Jaroslovsky, Bankruptcy Judge, Presiding

Appearances:　　Thomas P. Kelly, III, argued for Appellant Wallace Eugene Francis; Deborah S. Bull argued for Appellee Debra Lynn Wallace.

Before:　DUNN, JURY, and KIRSCHER, Bankruptcy Judges.

DUNN, Bankruptcy Judge:

Wallace Eugene Francis ("Francis"), a chapter 7[1] debtor,[2] appeals the bankruptcy court's summary judgment determination that his obligation to "pay and hold Wife harmless" from certain credit card obligations, as provided in the stipulated marital dissolution judgment with his former spouse, appellee Debra Lyn Wallace ("Wallace"), was excepted from his discharge under § 523(a)(15). We AFFIRM.

## I. FACTUAL BACKGROUND

The relevant facts in this appeal are straightforward and are not in dispute.

Francis filed a petition for relief under chapter 7 on July 12, 2012. Wallace was listed as an unsecured creditor on Francis' Schedule F. However, the amount of Wallace's claim was stated as "unknown," and Francis specified Wallace's claim as "contingent," "unliquidated" and "disputed."[3]

---

[1] Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[2] The joint debtors in the underlying main bankruptcy case are Francis and his current wife, Tracy Danielle Francis, but since all issues in this appeal relate solely to Francis, no further references to Ms. Francis will be made.

[3] Francis did not include the schedules filed in his main chapter 7 case in his excerpts of record. However, in order to review the complete record of relevant documents, we accessed the bankruptcy court's electronic docket and the imaged documents
(continued...)

-2-

Prior to the bankruptcy filing, the parties stipulated to a marital dissolution judgment ("Judgment") that was entered by the Sonoma County Superior Court in case no. SFL-44977 on May 26, 2009. Part C of the Judgment, titled "Property Division," included the following preamble in Section 1.01:

> Husband [Francis] will be confirmed, awarded and assigned as his separate property, those assets and liabilities as set forth below, including without limitation, those assets which are his separate property. Wife [Wallace] transfers to Husband as his separate property all of her right, title and interest in each asset. <u>Husband will pay and hold Wife harmless from each liability</u>.

(Emphasis added.) Section 1.01 goes on to list various property items that were recognized as the separate property of Francis and various debt obligations, including credit card debts ("Credit Card Debts"), that Francis covenanted to pay and from which, he agreed to hold Wallace harmless. Part D, Section 1.05 states that:

> This [Judgment] is the result of the joint efforts of the parties. This [Judgment] and each of its provisions will be interpreted fairly, simply, and not strictly for or against either party.

The Judgment further provided that it would be "governed by, and interpreted in accordance with California law." Part D, Section 1.07 of the Judgment.

At some point in time, Francis stopped making payments on

³(...continued) included therein to review Francis' Schedule F. <u>See</u> <u>O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)</u>, 887 F.2d 955, 957-58 (9th Cir. 1989) (holding that this Panel can take judicial notice of the bankruptcy court record).

the Credit Card Debts, and Wallace filed suit in California state court to enforce the Judgment. Francis' chapter 7 filing followed closely thereafter.

Francis filed an adversary proceeding against Wallace, seeking a determination that any obligation to pay the Credit Card Debts under the Judgment was not excepted from his discharge under § 523(a)(15). Wallace answered the adversary proceeding complaint, requesting that Francis' obligations under the Judgment "be deemed non-dischargeable and that [Wallace] be awarded the costs of defending this action, attorney's fees and such other relief as this Court determines is just and proper." Wallace subsequently filed a motion for summary judgment ("SJ Motion"), arguing that Francis' obligation to pay the Credit Card Debts under the Judgment, along with any attorneys fees and costs incurred to enforce the Judgment, was excepted from his discharge under § 523(a)(15). Francis opposed the SJ Motion, arguing that the "hold harmless" language of the Judgment did not support a nondischargeable debt to Wallace under § 523(a)(15) because there was no explicit obligation to "indemnify" her for purposes of California law.

The bankruptcy court heard argument on the SJ Motion on May 24, 2013 and took the matter under submission. It entered its Memorandum on Motion for Summary Judgment ("Memorandum") granting Wallace's SJ Motion on May 30, 2013. The summary judgment order and a judgment in favor of Wallace in the adversary proceeding were entered on June 12, 2013.

Francis filed a timely notice of appeal.

//

-4-

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

As stated by Francis, the sole issue in this appeal is, "Did the Bankruptcy Court err by failing to apply California law in granting the Appellee's Motion for Summary Judgment?"

## IV. STANDARDS OF REVIEW

We review a bankruptcy court's legal conclusions, including its interpretation of provisions of the Bankruptcy Code, de novo. Roberts v. Erhard (In re Roberts), 331 B.R. 876, 880 (9th Cir. BAP 2005), aff'd, 241 F. App'x 420 (9th Cir. 2007). We also review de novo a bankruptcy court's decision to grant a motion for summary judgment. Marciano v. Fahs (In re Marciano), 459 B.R. 27, 35 (9th Cir. BAP 2011), aff'd, 708 F.3d 1123 (9th Cir. 2013). De novo review requires that we consider a matter anew, as if no decision had been made previously. United States v. Silverman, 861 F.2d 571, 576 (9th Cir. 1988); B-Real, LLC v. Chaussee (In re Chaussee), 399 B.R. 225, 229 (9th Cir. BAP 2008).

We may affirm the decision of the bankruptcy court on any basis supported by the record. Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

## V. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriately granted where review of the relevant record establishes that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Civil Rule 56(a), applicable in

adversary proceedings in bankruptcy under Rule 7056; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Ilko v. Cal. State Bd. of Equalization (In re Ilko)</u>, 651 F.3d 1049, 1052 (9th Cir. 2011).

## VI.  DISCUSSION

1.   <u>Section 523(a)(15) – Its Interpretation and Application</u>

While our consideration of issues with respect to exceptions to discharge under § 523(a), and particularly § 523(a)(15), is informed by state law, our interpretation of § 523(a)(15) is fundamentally a question of <u>federal</u> law.  <u>See, e.g.</u>, <u>Taylor v. Taylor (In re Taylor)</u>, 737 F.3d 670, 676-77 (10th Cir. 2013):

> The nature of the obligation is not restricted to the parties' label in the settlement agreement and is a question of federal law.  <u>Sylvester [v. Sylvester]</u>, 865 F.2d at 1166; <u>see</u> <u>Young v. Young (In re Young)</u>, 35 F.3d 499, 500 (10th Cir. 1994) (finding that shared intent "is not limited to the words of the settlement agreement, even if unambiguous" and stating that "the bankruptcy court is required to look behind the words and labels of the agreement in resolving this issue.").  That said, state law may inform the nature of the interest.

<u>Jodoin v. Samayoa (In re Jodoin)</u>, 209 B.R. 132, 137-38 (9th Cir. BAP 1997); <u>Gionis v. Wayne (In re Gionis)</u>, 170 B.R. 675, 681 (9th Cir. BAP 1994):

> The ultimate issue on the merits, whether a state court's award of $185,000 in connection with a marital dissolution constitutes nondischargeable alimony, maintenance, or support, is a question of federal law with respect to which the labels that were applied under state law are not binding.

<u>Sweck v. Sweck (In re Sweck)</u>, 174 B.R. 532, 534 (Bankr. D.R.I. 1994) (The Bankruptcy Code requires that the bankruptcy court "determine the nature of the debts, regardless of the labels placed on them by the parties or the family court.").

-6-

Section 523(a)(15) sets forth an exception to a chapter 7 debtor's discharge for a debt owed "to a spouse, former spouse, or child of the debtor and [not a support obligation] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, . . . ."[4] The legislative history of the 1994 amendments to the Bankruptcy Code, which added the initial version of § 523(a)(15), gives a strong indication of congressional intent in providing the additional exception to discharge in § 523(a)(15):

> Subsection (e) [of § 304 of H.R. 5116] adds a new exception to discharge for some debts arising out of a divorce decree or separation agreement that are not in the nature of alimony, maintenance or support. <u>In some instances, divorcing spouses have agreed to make payments of marital debts, holding the other spouse harmless from those debts</u>, in exchange for a reduction in alimony payments. In other cases, spouses have agreed to lower alimony based on a larger property

---

[4]  § 523(a)(15), as originally adopted in the Bankruptcy Reform Act of 1994, was modified by two affirmative defenses or "exceptions within the exception," for situations where:

> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

The two quoted defenses or exceptions to the application of § 523(a)(15) were deleted by Congress in the amendments to the Bankruptcy Code included in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

-7-

settlement. If such "hold harmless" and property settlement obligations are not found to be in the nature of alimony, maintenance, or support, they are dischargeable under current law. The nondebtor spouse may be saddled with substantial debt and little or no alimony or support. . . .

140 Cong. Rec. H 10770 (Oct. 4, 1994) (emphasis added). We note that in Part B of the Judgment, titled "Spousal Support," Francis and Wallace each waived and released "all right and claim to receive spousal support from the other at any time."

Decisions of Circuit Courts of Appeals interpreting § 523(a)(15) have been consistent in recognizing its breadth. See, e.g., Short v. Short (In re Short), 232 F.3d 1018, 1020 (9th Cir. 2000) ("We conclude that the debt is nondischargeable because it was incurred by the debtor as part of the division of property in the course of a judgment of dissolution."); In re Crosswhite, 148 F.3d 879, 883 (7th Cir. 1998) (§ 523(a)(15) "sets forth as nondischargeable any marital debt other than alimony, maintenance or support that is incurred in connection with a divorce or separation"); Gamble v. Gamble (In re Gamble), 143 F.3d 223, 225 (5th Cir. 1998) ("Section 523(a)(15) purports to apply to 'any debt . . . [not in the nature of alimony or child support] that is incurred in the course of a divorce or separation,' and the bankruptcy court was clearly correct to give this provision the full reach implicated by its plain language."); McCafferty v. McCafferty (In re McCafferty), 96 F.3d 192, 200 (6th Cir. 1996) ("Congress amended the Bankruptcy Code in 1994 to allow exemptions from discharge for all obligations incurred as a result of a divorce decree."). In In re Short, the Ninth Circuit concluded that a debt incurred by the debtor to his

-8-

former spouse <u>prior to their marriage but which he agreed to pay in their stipulated dissolution judgment</u> was excepted from his discharge under § 523(a)(15).

A nondebtor ex-spouse in a § 523(a)(15) action bears the burden of proof to establish by a preponderance of the evidence that the subject debt 1) is not a support obligation of the kind described in § 523(a)(5), and 2) was incurred by the debtor in a divorce or separation or under a separation agreement, divorce decree or marital dissolution judgment or order. <u>See, e.g.</u>, <u>McFadden v. Putnam (In re Putnam)</u>, 2012 WL 8134423 at *18 (Bankr. E.D. Cal. Aug. 30, 2012); <u>Burckhalter v. Burckhalter (In re Burckhalter)</u>, 389 B.R. 185, 188 (Bankr. D. Colo. 2008); <u>Ruhlen v. Montgomery (In re Montgomery)</u>, 310 B.R. 169, 175-76 (Bankr. C.D. Cal. 2004). Since, as noted above, the parties each waived support in Part B of the Judgment, the first element is undisputed. There likewise can be no dispute that Francis' obligation to pay and hold Wallace harmless from the Credit Card Debts arises directly from his covenants in part C of the marital dissolution Judgment. There is no requirement in § 523(a)(15) that a debt obligation incurred as part of a dissolution judgment be payable directly to the ex-spouse in order to be excepted from a debtor's discharge. <u>In re Montgomery</u>, 310 B.R. at 177-78; <u>Johnston v. Henson (In re Henson)</u>, 197 B.R. 299, 303 (Bankr. E.D. Ark. 1996):

> Section 523(a)(15) does not require that a court order the debt be paid directly to the spouse. The statute provides that a debtor is not discharged from <u>any</u> debt incurred by the debtor in the course of a divorce or in connection with a divorce decree. The statute does not impose a "direct pay" requirement.

-9-

(Emphasis in original.)  See also Wodark v. Wodark (In re Wodark), 425 B.R. 834, 838 (10th Cir. BAP 2010).

2.  Section 101(12) and California Indemnity Law

Francis' sole argument in this appeal is that under California contract law, an obligation to "hold harmless" is not synonymous with an obligation to "indemnify," and in order for Wallace to be able to enforce against Francis the third party liabilities allocated to Francis in the Judgment, clear "indemnification" language needed to be used in the Judgment. Accordingly, Francis' real argument is not so much with the bankruptcy court's interpretation of § 523(a)(15) but rather that Francis' obligation to "pay and hold [Wallace] harmless" from the Credit Card Debts in the Judgment is not a "debt" in terms of "liability on a claim" for purposes of § 101(12).  If Francis' Judgment obligation is not an enforceable "debt," it cannot be excepted from Francis' discharge under § 523(a)(15) and, in fact, does not need to be discharged.

That argument was not specifically made at any point to the bankruptcy court or in the briefs Francis filed in this appeal and could be treated as waived.  See, e.g., United States v. Carlson, 900 F.2d 1346, 1349 (9th Cir. 1990) (issues not raised at the trial court ordinarily will not be considered for the first time on appeal); Law Offices of Neil Vincent Wake v. Sedona Inst. (In re Sedona Inst.), 220 B.R. 74, 76 (9th Cir. BAP 1998) (arguments not specifically and distinctly made in appellant's opening brief are waived and ordinarily, will not be considered), aff'd, 21 Fed. Appx. 723 (9th Cir. 2001).  However, since Francis' argument presents a question of law that has a

potentially important impact at the intersection of federal bankruptcy law and California law, we exercise our discretion to consider it.

Francis cites California Civil Code ("CCC") § 2772 for its definition of "indemnity" as "a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person" and argues, relying on authorities outside the family law area, that an obligation to indemnify is legally distinct from an obligation to hold harmless.

> Are the words "indemnify" and "hold harmless" synonymous? No. One is offensive and the other is defensive – even though both contemplate third-party liability situations. "Indemnify" is an offensive right – a sword – allowing an indemnitee to seek indemnification. "Hold harmless" is defensive: The right not to be bothered by the other party itself seeking indemnification.

Queen Villas Homeowners Ass'n v. TCB Property Management, 149 Cal. App. 4th 1, 9 (2007) (explanatory dicta in a case where the subject contract included obligations both to indemnify and hold harmless). See also Myers Building Indus., Ltd. v. Interface Tech., Inc., 13 Cal. App. 4th 949, 969 (1993) ("Indemnity agreements ordinarily relate to third party claims." Again, that statement is dicta in a decision involving a contract that included both indemnification and hold harmless provisions and where the issue was whether an attorneys fee provision was reciprocal in its application under CCC § 1717.).

Francis argues that even if he breached his obligation under the Judgment to pay the Credit Card Debts, the third party creditors are not pursuing him. (At oral argument, Francis'

counsel indicated that the Credit Card Debts had been paid by Wallace.)  His obligation to pay the Credit Card Debts was not a direct obligation to Wallace, and in the absence of clear indemnification language in the Judgment in her favor, Wallace cannot enforce that obligation.  Gotcha!

Francis underlines that argument by citing California decisions for the proposition that indemnification language in a contract "must be particularly clear and explicit, and will be construed strictly against the indemnitee."  Appellant's Opening Brief at 12, citing Prince v. Pac. Gas & Elec. Co., 45 Cal. 4th 1151, 1158 (2009); Crawford v. Weather Shield Mfg., Inc. 44 Cal. 4th 541, 552 (2008); and E.L White, Inc. v. City of Huntington Beach, 21 Cal. 3d 497, 507 (1978).  Here, however, Francis overreaches.  While it is true that those decisions stand for the proposition that in order to enforce an express indemnity, the contract language must be clear and specific, Francis ignores the line of California authority discussed in some of the same decisions that recognizes that implied indemnity obligations may be enforced as a matter of equity.

> The obligation of indemnity, which we have defined as "the obligation resting on one party to make good a loss or damage another has incurred" (citations omitted) . . . may find its source in equitable considerations brought into play either by contractual language not specifically dealing with indemnification or by the equities of the particular case. (Citations omitted.)

E.L. White, Inc. v. City of Huntington Beach, 21 Cal. 3d at 506-07.  See Prince v. Pac. Gas & Elec. Co., 45 Cal. 4th at 1157-59; Garlock Sealing Tech., LLC v. Nak Sealing Tech. Corp., 148 Cal. App. 4th 937, 967-72 (2007) ("As our review of the cases

-12-

demonstrates, a duty to indemnify has been implied from the obligation of the contracting parties to perform their promises, the reasoning being that a promise to perform includes an implied promise to perform properly.").

In this case, Francis "promised" in the Judgment to "pay and hold [Wallace] harmless" from the Credit Card Debts. It is undisputed that he breached the promise to pay the subject debts. Wallace apparently paid them and was damaged as a result. In these circumstances, in spite of the absence of specific "indemnification" language in Francis' covenants in the Judgment, Wallace has an implied indemnification claim against Francis under California law that constitutes a "debt" for purposes of § 101(12). See In re Putnam, 2012 WL 8134423 at *8; Garlock Sealing Tech., LLC v Nak Sealing Tech Corp., 148 Cal. App. 4th at 973 (The conceptual basis for implied contractual indemnity "is the idea of a contracting party's fair responsibility for foreseeable damages caused by its breach of the promises it made in the contract."). By its terms, the Judgment provided that it was to be "interpreted fairly, simply and not strictly for or against either party."

3. Enforcing California Marital Dissolution Judgments

Beyond the dubious merits of Francis' arguments in a pure contract context, as discussed above, the undisputed fact in this appeal is that the parties' agreement was incorporated and merged into the Judgment that the Sonoma County Superior Court entered in their marital dissolution proceeding. See Judgment, Part D, Section 1.01; Flynn v. Flynn, 42 Cal. 2d 55, 59 (1954) ("It is settled that a document may be incorporated either expressly or

-13-

by apt reference into a judgment or decree so as to make it an operative part of the order of the court."). In the two-page first part of the Judgment prepared and signed by the California Superior Court judge, the court expressly reserved jurisdiction "to make other orders necessary to carry out this [Judgment]."

Under California law, parties have many avenues for enforcing judgment obligations. In fact, California Family Code ("CFC") § 290 provides that, "[a] judgment or order made or entered pursuant to [the CFC] may be enforced by the court by execution, the appointment of a receiver, or contempt, or by any other order as the court in its discretion determines from time to time to be necessary." (Emphasis added.) The Judgment specifically references its satisfaction of the requirements of CFC § 2105(c) and the parties' compliance with CFC § 2104 and indicates that the matter was heard pursuant to CFC § 2336. See Judgment at 1-2. Accordingly, the record reflects the undisputed fact that the Judgment was "made or entered" pursuant to the CFC.

CFC § 290 gives courts broad discretionary authority in enforcing the dissolution judgments they enter. That authority includes the power to enforce a judgment party's covenants to pay and hold harmless his or her ex-spouse from debts to third parties. See, e.g., In re Putnam, 2012 WL 8134423 at *10; In re Montgomery, 310 B.R. at 180; Fithian v. Fithian, 74 Cal. App. 3d 397, 402 (1977) ("That a court in a dissolution action has the power to order a spouse to pay money or deliver property into the hands of a third party cannot be doubted."); Young v. Superior Court, 105 Cal. App. 2d 65, 67 (1951):

If [a property settlement] agreement or any of its

-14-

provisions are actually incorporated in the [divorce] decree and the decree orders the performance of such agreement or such provision or provisions, then the agreement or the provision or provisions so incorporated are merged in the decree and may be enforced only as an order of the court.

(citing <u>Shogren v. Superior Court</u>, 93 Cal. App. 2d 356 (1949)).

The Judgment obligated Francis to pay and hold Wallace harmless from the Credit Card Debts. Wallace's claim for Francis' failure to pay and hold her harmless from the Credit Card Debts was an enforceable Judgment debt in California state court. Although it is not material to our determination of this appeal, we note that Francis sought the protection of the automatic stay in bankruptcy shortly after Wallace initiated efforts in California state court to enforce the Judgment. We conclude that Francis' arguments in this appeal are meritless, and the bankruptcy court did not err in granting summary judgment to Wallace on the § 523(a)(15) claim contested in the adversary proceeding.

**VII. CONCLUSION**

For the foregoing reasons, we AFFIRM.

Concurrence begins on next page.

JURY, Bankruptcy Judge, concurring:

I concur in the Opinion affirming the bankruptcy court's judgment that a debt owed by Francis to Wallace is nondischargeable under § 523(a)(15). I also do not quibble with the essence of the reasoning applied by the majority in reaching that conclusion. I write separately, however, to emphasize that the existence of a "debt" owed by Francis to Wallace arises under application of California law and, to that extent, I disagree with the majority's statement "[w]hile our consideration of issues with respect to exceptions to discharge under § 523(a), and particularly § 523(a)(15), is *informed by state law*, our interpretation of § 523(a)(15) is fundamentally a question of <u>federal</u> law" (italicized emphasis added). I feel compelled to make this distinction since Francis has submitted that the sole issue on appeal is that the bankruptcy court erred by not applying California law. I conclude that the bankruptcy court did indeed apply California law to determine that Francis owes a debt to Wallace. Under federal law, this Opinion confirms that debt is nondischargeable.

Section 523(a)(15) provides an exception to discharge "from any debt" to a former spouse incurred by the debtor in connection with a separation agreement which is not excepted under (a)(5). The term "debt" is defined in § 101(12) as "liability on a claim." The term "claim" is further defined in § 101(5) to mean:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; or

-16-

> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, . . . .

It is subsection (B) of this definition which creates a debt — i.e. a right to payment — in this circumstance. The Supreme Court has held that a "right to payment" is "nothing more nor less than an enforceable obligation." Johnson v. Home State Bank, 501 U.S. 78, 83 (1991). Whether a right to payment exists in a bankruptcy case is generally determined by reference to state law. Butner v. United States, 440 U.S. 48, 55 (1979).

Francis asserts that the nuances between the terms "hold harmless" and "indemnification" compels the conclusion under California law that no right to payment exists from Francis to Wallace. As recognized by the majority, this conclusion is wrong. An excellent discussion of the mechanism by which California law creates this right to payment is found in an unpublished opinion from a bankruptcy court, McFadden v. Putnam (In re Putnam), 2012 WL 8134423, at *9-10 (Bankr. E.D. Cal. 2012), where the judge tussled with an argument similar to the one made here by Francis.

In Putnam, the debtor had obligated himself under a Marital Settlement Agreement (MSA) to make lease payments on his ex-wife's (McFadden's) car and to make other payments to third-party creditors. After the debtor defaulted on these payments, and therefore defaulted under the terms of the MSA, he filed bankruptcy and sought to discharge the obligations because they did not create a "right to payment" or debt which would be nondischargeable under § 523(a)(15). After noting that McFadden might be entitled to specific performance of the MSA on those

-17-

terms, the judge recognized that was not enough under § 101(5)(B):

> That McFadden has a right to an equitable remedy is not quite enough. A right to an equitable remedy for breach of performance will only constitute a 'claim' if the breach of performance also 'gives rise to a right to payment.' At first, it appears on the face of the Dissolution Judgment that compelling specific performance of Putnam's obligations under the judgment would result in payment to *third-party creditors* but not necessarily to McFadden. However, McFadden may have rights to payment as well, through the State Court's use of its equitable power in enforcing the terms of the Dissolution Judgment. Id. at *10.

The bankruptcy court then noted, as the majority here also does, that although a MSA is interpreted as a contract under California law, once it is incorporated into a dissolution judgment, post judgment remedies supplied by the Cal. Fam. Code become available for enforcement. This analysis then leads to the discussion of Cal. Fam. Code § 290 which provides the "right to payment:"

> Thus, to enforce her rights, McFadden may rely on California Family Code section 290, which generally provides that '[a] judgment or order made or entered pursuant to [the California Family Code] may be enforced by the court by execution, the appointment of a receiver, or contempt, or by any other order as the court in its discretion determines from time to time to be necessary.' This statute give the state court broad discretion in fashioning orders enforcing family law judgments. As a result, a court has equitable power to determine the manner in which an obligation under a dissolution judgment is to be paid or performed. And this would include the 'power to order a spouse to pay money or deliver property into the hands of a third party.' Id.

Consistent with this reasoning, the Putnam court concluded that the state court could award monetary damages to McFadden based on the debtor's breach of the MSA. Id. That award of monetary damages is a right to payment: a debt owed to a former

-18-

spouse.

Cal. Fam. Code § 290 applies equally here as in <u>Putnam</u> and the remedy available to Wallace is enforcement of a "right to payment" from Francis.  The bankruptcy court did not err by applying the wrong law.  The debt arose under California law, properly applied, a debt which is nondischargeable under § 523(a)(15).