ALARCON, Circuit Judge:
 

 Lawrence Short appeals from the judgment of the Bankruptcy Appellate Panel of the Ninth Circuit (“BAP”) affirming the decision of the bankruptcy court declaring nondischargeable a debt he was ordered to pay in a judgment of dissolution entered in a California state court. He contends that the debt did not come within the provisions of 11 U.S.C. § 523(a)(15) which excludes debts incurred by a debtor in connection with a divorce decree because it was a separate property debt incurred by him prior to the marriage. Mr. Short also asserts that the district court erred in holding that the income of a person who lives with a debtor in a romantic relationship (hereinafter a “live-in romantic companion”) can be considered in calculating a debtor’s ability to pay a debt incurred in a divorce or dissolution decree.
 

 We conclude that the debt is nondis-chargeable because it was incurred by the debtor as part of the division of property in the course of a judgment of dissolution. We also hold that the income of a live-in romantic companion may be considered in determining a debtor’s ability to pay a debt incurred in a judgment of dissolution pursuant to § 523(a)(15)(A) whenever the debtor and his or her live-in romantic companion are economically interdependent or form a single economic unit.
 

 I
 

 Pamela Short and Mr. Short began living together in the spring of 1992. At that time, Mr. Short was the sole owner of a trucking business. Ms. Short agreed to lend $50,000 to Mr. Short so that he could pay off obligations he had incurred as the result of a prior divorce, and to purchase another truck.
 

 Ms. Short borrowed the money requested by Mr. Short from the El Capitan National Bank in Sonora, California, using a parcel of land known as 10955 Laru Lane, Sonora, California, and a double-wide mobile home as collateral. On May 5, 1992, she loaned Mr. Short $2,000 to make a down payment on a 1993 Peterbilt truck. Between that date and July 27, 1992, Ms. Short loaned Mr. Short an additional $48,663.98 to complete the purchase of the truck.
 

 The parties were married on May 16, 1992. On July 1, 1992, they purchased a house located at 16535 Caddo Circle in Sonora from Mr. Short’s parents. Title to the residence was taken in the names of both Mr. and Mrs. Short. Ms. Short paid the loan points, closing fees, and one installment payment. She also loaned Mr. Short money to pay off his credit card debts.
 

 On July 27, 1992, the day the Peterbilt truck was delivered, Ms. Short entered into a post-nuptial agreement with Mr. Short. The purpose of the agreement was to memorialize Mr. Short’s obligation to repay the money she had loaned him. The post-nuptial agreement was prepared by the debtor’s lawyer who also represented him in the bankruptcy proceedings and before this court. Ms. Short was not represented by counsel in the negotiation of the agreement.
 

 
 *1021
 
 The post-nuptial agreement provided that the Caddo Circle residence, “notwithstanding the form of conveyance by which the property was taken or acquired,” and Mr. Short’s interest in his trucking business, would be his separate property. The parties agreed that Ms. Short’s mobile home and the Laru Lane parcel would be her separate property. If, however, the marriage lasted more than three years, the parties agreed that these properties would become community property.
 

 The post-nuptial agreement also provided that Mr. Short’s obligation to repay $50,000 to Ms. Short was incurred prior to their marriage and was the separate property of Ms. Short. The agreement contains the following provision:
 

 The parties agree that if the marriage lasts more than three years, that as of May 1995 the $50,000 obligation will be canceled. However, if the parties separate or divorce prior to the three year anniversary of their marriage, then Mr. Short promises to pay to Mr. Short [sic] the sum of $50,000 with no interest the minimum payment of $500 per month until such time as it has been repaid.
 

 A few weeks after the post-nuptial agreement was executed, Mr. Short and Ms. Short separated on August 23, 1992. Mr. Short filed for a dissolution of the marriage. A judgment of dissolution was entered on June 3, 1993. The parties stipulated to the terms of the decree of dissolution regarding the division of property. The stipulated judgment awarded the Caddo Circle property and the trucking business to Mr. Short. The Laru Lane property was awarded to Ms. Short. The judgment also divided the furniture and directed Mr. Short to deliver an antique dresser to Ms. Short as her separate property. The Malibu Ski Boat and trailer were awarded to Ms. Short. Both parties waived spousal support.
 

 The judgment further provides that “[t]he stipulation as agreed upon by the parties and set forth in this judgment does hereby supersede the Post Nuptial Agreement and becomes the agreement of the parties. The Post Nuptial Agreement is hereby null and void.”
 

 The stipulated judgment contains the following recitation regarding Mr. Short’s obligation to Ms. Short:
 

 During the marriage, the respondent loaned the petitioner certain sums of money. Further, the parties have agreed to deduct one half of the value of the above mentioned boat, $3[,]750[.]00 from the amount of the loan, and previous payments that have been made by the petitioner to the respondent in the sum of $4,800. Thusly, the petitioner owed to the respondent the principal sum of $41,450. This amount will bear interest at the rate of 8.469% per annum simple interest, said interest commencing on said principal amount on May 15, 1993. The petitioner shall pay the sum of $600 per month to the respondent until such time as the loan is paid. The loan is an unsecured debt.
 

 In 1997, Mr. Short entered into a romantic relationship with Pamela Slover. They became live-in romantic companions in June of that year in the Caddo Circle residence. Mr. Short made his last payment to Ms. Short in the same month. Mr. Short purchased a new automobile for $35,173.20 on June 15,1997.
 

 Mr. Short filed a bankruptcy petition under Chapter 7 on January 23, 1998. At the time of the filing, Mr. Short had reduced the debt owing to Ms. Short to $23,525.62. In addition, $1,124.76 in interest had accrued from Mr. Short’s last payment until the date of the petition. On April 27, 1998, Ms. Short filed a complaint in the bankruptcy court for a determination whether the debt pursuant to the stipulated judgment was nondischargeable under 11 U.S.C. § 523(a)(15). On December 31, 1998, the bankruptcy court found that Mr. Short’s debt to Ms. Short was nondis-chargeable.
 

 The court concluded that Mr. Short’s debt was “incurred in connection with the parties’ divorce” and that Mr. Short had the ability to pay because “it is appropriate
 
 *1022
 
 to consider both the debtor’s and [Ms.] Slover’s income and expenses to determine whether the debtor can afford to repay his debt to [Ms. Short].”
 

 Mr. Short and Ms. Slover entered into a business relationship in late 1997. In connection with their business relationship, Ms. Slover leased a truck and Mr. Short drove the truck. Ms. Slover was paid the monthly gross for the hauls made by Mr. Short. Ms. Slover did not pay Mr. Short a salary. Instead, she paid his monthly living expenses. Mr. Short estimated his living expenses at $2,667.53 and that he received $200 per month in spending money. Further, Ms. Slover took money out of the business at her discretion. Over a ten-month period, Slover grossed about $94,233.91. Short testified that Ms. Slo-ver’s monthly income was $1,775 and his monthly income was $2,667.53. Then-monthly household expenses were estimated at $4,177.53. Taking these facts into consideration, the bankruptcy court held that Mr. Short failed the “relative harm test” of section 523(a)(15)(B), requiring the debtor to show that the benefit of discharge to the debtor exceeds the detriment of discharge to the former spouse.
 

 Mr. Short appealed to the BAP. Before that court, Mr. Short asserted that the bankruptcy court applied an incorrect legal standard in declaring that the debt was incurred in the course of a divorce proceeding. He further argued that the bankruptcy court misapplied § 523(a)(15)(A) by including the income of Ms. Slover, his live-in romantic companion, in calculating his ability to pay the debt. The BAP unanimously affirmed the bankruptcy court’s order on December 16,1999. The BAP held that the record showed that the debt was incurred in the course of a divorce proceeding. The BAP also determined that, “in light of the debtor’s living and employment arrangement with Ms. Slover ... the bankruptcy court did not err when it considered the income of Ms. Slover in determining that the debtor had the ability to pay.” Mr. Short timely appealed to this court on January 13, 2000.
 

 II
 

 Mr. Short maintains that the BAP erred by affirming the bankruptcy court’s judgment that his debt to Ms. Short was nondischargeable. Mr. Short argues that his debt to Ms. Short was not “incurred in the course of a divorce or separation,” as § 523(a)(15) requires.
 
 [1]
 
 A bankruptcy courts’s rulings on appeal from the BAP are reviewed de novo.
 
 See Mitchell v. Franchise Tax Bd. of California (In re Mitchell),
 
 209 F.3d 1111, 1115 (9th Cir.2000). We conduct de novo review of the bankruptcy court’s legal conclusions and examine its factual findings for clear error.
 
 See Murray v. Bammer (In re Bammer),
 
 131 F.3d 788, 791 (9th Cir.1997) (en banc).
 

 Because the bankruptcy court’s decision that Mr. Short’s obligation to pay Ms. Short the unpaid balance of the money she lent him was “incurred in the course of a divorce or separation” is a legal question, we must review it de novo. The bankruptcy court concluded that repayment of Ms. Short’s $50,000 loan to Mr. Short was “conditioned upon a divorce occurring within three years of [their] marriage,” signaling that the loan was “clearly made [by Ms. Short] in contemplation of and because of the parties’ marriage.” Mr. Short argues that Ms. Short’s loan to him was made before their divorce, that at least a portion of it was transferred to him before his marriage to Ms. Short, and that the loan therefore constitutes a separate property debt incurred by him prior to his marriage to Ms. Short. In the post-nuptial agreement, however, Mr. Short promised to repay his loan to Ms. Short “if the marriage last[ed] more than three years.” More significantly, the decree of dissolution of June 3, 1993, provided that Mr. Short “owed to [Ms. Short] $41,450” at 8.469% interest and that Mr. Short would
 
 *1023
 
 “pay the sum of $600 per month to [Ms. Short] until such time as the loan [was] paid.” Mr. Short’s contention that his $50,000 loan from Ms. Short is not divorce-related, even though the terms of its repayment were expressly incorporated into the decree of dissolution, lacks merit.
 
 See, e.g., In re Crosswhite,
 
 148 F.3d 879, 881-82 (7th Cir.1998) (holding nondischargeable a husband’s debt to his wife where the husband had agreed to assume the debt under the terms of the couple’s divorce agreement, and stating that § 523(a)(15) “is intended to cover divorce-related debts such as those in property settlement agreements”).
 

 Ill
 

 Mr. Short next argues that the bankruptcy court erred by taking into account Ms. Slover’s income in determining whether Mr. Short had the ability to pay his debt to Ms. Short. Whether the income of a debtor’s live-in romantic companion can be considered by a bankruptcy court in determining a debtor’s ability to pay debts owed under a divorce decree is a novel question of law in this circuit. We review the bankruptcy court’s conclusion de novo.
 

 Most bankruptcy courts have held that the income of a debtor’s new spouse or romantic live-in companion is relevant in determining the dischargeability of a divorce-related debt to a former spouse.
 
 See Fitzsimonds v. Haines (In re Haines),
 
 210 B.R. 586, 590 (Bankr.S.D.Cal.1997) (“[W]here a debtor has remarried, his or her spouse’s net income should be included in the calculation of ‘disposable income’.”);
 
 Comisky v. Comisky, II (In re Comisky, II),
 
 183 B.R. 883, 883-84 (Bankr.N.D.Cal.1995) (listing the “substantial income” of debtor’s new wife as a factor in determining a debtor’s ability to pay);
 
 see also Halper v. Halper (In re Halper),
 
 213 B.R. 279, 284 (Bankr.D.N.J.1997) (concluding that determination of the relative benefits of discharge to the debtor and creditor “mandates consideration of the income of a live-in eompanion[ ]”);
 
 Cleveland v. Cleveland (In re Cleveland),
 
 198 B.R. 394, 398 (Bankr.N.D.Ga.1996) (“[W]hen supplemental income from a new spouse or live-in companion serves to alter the debtor’s financial prospects, the Court must factor that consideration into its evaluation of his ‘ability to pay.’ ”).
 
 But see Willey v. Willey (In re Willey),
 
 198 B.R. 1007, 1014-15 (Bankr.S.D.Fla.1996) (stating that counting a new spouse’s income for purposes of determining a debtor’s ability to pay might produce a “chilling effect on the courtship and re-marriage of divorced partners”).
 

 The Seventh Circuit concluded in
 
 In re Crosswhite,
 
 148 F.3d 879 (7th Cir.1998), that the income of a debtor’s live-in romantic companion may be considered by a bankruptcy court in determining the dis-chargeability of a debtor’s obligation to his former spouse.
 
 See id.
 
 at 889. “[E]co-nomic interdependence,” stated the court, “can indeed result in a significant alteration of [a debtor’s] economic realities.”
 
 Id.
 
 The court left open the possibility, however, that in some situations it would be inappropriate for a bankruptcy court to consider the income of a debtor’s live-in romantic companion.
 
 See id.
 
 at 888-89. Rather than lay down a hard-and-fast rule, the court decided “not [to] set forth in detail an exhaustive methodology applicable in each and every case. Indeed, the equitable nature of the [dischargeability] inquiry rendered] futile an attempt to impose such a universal formula.”
 
 Id.
 
 The court in
 
 In re Crosswhite
 
 instead adopted a flexible approach, instructing bankruptcy courts to evaluate a debtor’s overall financial condition when determining discharge-ability.
 
 See id.
 
 at 889. The Seventh Circuit held that bankruptcy courts should look to a variety of factors in determining whether a debtor and his live-in romantic companion had become “economic[ally] in-terdependen[t],” including “the period of time the individuals have lived as a single economic unit and the degree to which they have commingled their assets.”
 
 Id.
 
 at 889 n. 17.
 

 We find the reasoning of
 
 In re Crosswhite
 
 persuasive. We are particularly impressed by the court’s conclusion that
 
 *1024
 
 determinations of dischargeability under § 523(a)(15) are likely to depend upon the overall financial position of the particular debtor before a bankruptcy court.
 
 See id.
 
 at 889 (“[T]he bankruptcy court set the correct course when it adopted a ‘totality of the circumstances’ approach to its inquiry [regarding dischargeability].”). Bankruptcy courts should not be compelled to consider the income of a debtor’s live-in romantic companion in determining dis-chargeability when manifestly inequitable judgments would result. We therefore hold that, in determining the discharge-ability of a divorce-related debt, a bankruptcy court may consider the income of a debtor’s live-in romantic companion whenever the debtor and his or her live-in romantic companion are economically interdependent or form a single economic unit. Whether a debtor and his or her live-in romantic companion are financially interdependent or form a single economic unit is a fact-intensive inquiry that will vary from case to case. The length of the relationship between a debtor and his or her live-in romantic companion, the extent to which the partners commingle assets and share liabilities, or evidence of efforts by a debtor to hide his or her assets in the accounts of a live-in romantic companion are among the factors that should be considered.
 

 Here, the bankruptcy court found that Ms. Slover and Mr. Short, in addition to living together as romantic companions, were jointly engaged in a business partnership. The bankruptcy court also determined that under Mr. Short and Ms. Slover’s economic arrangement, Ms. Slover employed Mr. Short but paid his “living expenses” of $2,677.53 a month in lieu of a salary, and that additional profits from Mr. Short and Ms. Slover’s business had not been disclosed to the court. Although Mr. Short and Ms. Slover have lived together only since 1998, the bankruptcy court found that neither their business nor their romantic relationship was likely to change materially and that, in any event, Mr. Short had “the ability to earn a living that [would] permit him to repay his obligations” even without the favorable business deal he had made with Ms. Slover. The bankruptcy court did not clearly err in finding that Mr. Short had the ability to pay the debt he was ordered to pay in the divorce decree. The bankruptcy court properly considered Ms. Slover’s income in determining whether Mr. Short had the ability to pay his debt to Ms. Short.
 

 CONCLUSION
 

 Because Mr. Short’s debt to Ms. Short was incurred by him as part of a division of property under the terms of a judgment of dissolution, we conclude that the debt was incurred in connection with a divorce decree and therefore subject to § 523(a)(15). We also hold that a bankruptcy court may consider the income of a debtor’s live-in romantic companion in determining a debtor’s ability to pay under § 523(a)(15)(A) whenever the debtor and his or her live-in romantic companion are economically interdependent or form a single economic unit. The bankruptcy court did not clearly err in concluding that Mr. Short and Ms. Slover were economically interdependent.
 

 AFFIRMED.
 

 [1]
 

 . By its terms, § 523(a)(15) applies only to debts “incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record....” 11 U.S.C. § 523(a)(15);
 
 see Gamble v. Gamble (In re Gamble),
 
 143 F.3d 223, 225 (5th Cir.1998) (interpreting § 523(a)(15)).