*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to 6th
Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name: 06b0018n.06**

# BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re:  STACI RENEE RAFFELD, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| JEREMY J. COLVIN, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | No. 05-8084 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STACI RENEE RAFFELD, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Eastern Division at Columbus.
No. 04-02089.

Submitted:  August 23, 2006

Decided and Filed:  November 14, 2006

Before: LATTA, SCOTT, and WHIPPLE, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:** Matthew J. Thompson, NOBILE, NEEDLEMAN & THOMPSON, Hilliard, Ohio, for
Appellant.  Jeremy J. Colvin, Canal Winchester, Ohio, pro se.

_____

**OPINION**
_____

WHIPPLE, Bankruptcy Appellate Panel Judge.  Staci Renee Raffeld ("Appellant") appeals an order of the bankruptcy court holding that a marital debt owed by her to Jeremy J. Colvin ("Appellee") is nondischargeable under 11 U.S.C. § 523(a)(15).[1]  For the reasons that follow, the order on appeal will be AFFIRMED.

## I.   ISSUES ON APPEAL

Did the bankruptcy court err in finding that the marital debt owed by Appellant is nondischargeable under § 523(a)(15) and, specifically, in considering the income of Appellant's fiancé in making that determination?

## II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel ("BAP") of the Sixth Circuit has jurisdiction to hear this appeal.  The United States District Court for the Southern District of Ohio has authorized appeals to the BAP, and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1).   Determinations of nondischargeability under § 523(a) are final orders for appeal purposes, *Nat'l City Bank v. Plechaty (In re Plechaty),* 213 B.R. 119, 121 (B.A.P. 6th Cir. 1997), and final orders of a bankruptcy court may be appealed as of right under 28 U.S.C. § 158(a)(1).

This Panel reviews a bankruptcy court's findings of fact for clear error and its conclusions of law *de novo.  Adell v. John Richards Homes Bldg. Co. (In re John Richards Homes Bldg. Co.)*, 439 F.3d 248, 253 (6th Cir.  2006).  However, because the trial transcript and documentary evidence admitted at trial are not part of the record on appeal, the Panel has no basis on which to determine whether the bankruptcy court's factual determinations were erroneous.  The proper factors to be considered in determining the dischargeability of a marital debt under § 523(a)(15) is a question of

_____

[1] This case was decided prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 ("BAPCPA").  References to the Bankruptcy Code (title 11, United States Code) are to the Code prior to amendment.

law, which the Panel reviews *de novo*. *Short v. Short (In re Short)*, 232 F.3d 1018, 1023 (9th Cir. 2000). Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination. *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001).

## III.   FACTS[2]

Appellant and Appellee were married on October 16, 1999. Approximately two years later, on October 22, 2001, a Decree of Dissolution of Marriage ("Decree") was entered by the Court of Common Pleas in Licking County, Ohio. The separation agreement attached to the Decree expressly provided that neither party would receive, and both waived, spousal support. Further, the Decree provided that Appellee was to initially pay certain taxes owed to the Internal Revenue Service with the provision that by January 1, 2005, Appellant would repay 50% of the tax debt paid by the Appellee, without any provision for interest. In accordance with the Decree, Appellee paid the Internal Revenue Service the entire sum due in the approximate amount of $12,200.00. Appellant has paid nothing toward the tax obligation.

On December 16, 2003, Appellant filed a petition for relief under Chapter 7 of the Bankruptcy Code. Appellee filed a timely complaint to determine the dischargeability of the marital debt at issue. A trial on the complaint was held on October 28, 2005, and an oral decision was announced from the bench, followed by a written decision entered October 31, 2005. In its Memorandum Opinion and Order, the bankruptcy court determined the debt in question to be a property settlement rather than a debt in the nature of support and further determined the debt to be nondischargeable under § 523(a)(15)(A) and (B). Appellant filed a timely notice of appeal on November 9, 2005.

## IV.   DISCUSSION

Section 523(a)(15) provides that an individual is not discharged from any debt that is not a nondischargeable alimony, maintenance, or support obligation covered under § 523(a)(5), unless

---

[2] The facts set forth in this opinion are those set forth in the bankruptcy court's opinion or found in the Complaint and Answer included in the Appendix.

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor. . .; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15). This section "is intended to cover divorce-related debts such as those found in property settlement agreements that 'should not justifiably be discharged.'" *Crosswhite v. Crosswhite (Crosswhite)*, 148 F.3d 879, 882 (7th Cir. 1998).

The initial burden of proving that the debt is of a type excepted from discharge under § 523(a)(15) rests with the objecting creditor/spouse. *Hart v. Molino (In re Molino)*, 225 B.R. 904, 907 (B.A.P. 6th Cir. 1998). Once this burden is met, the burden shifts to the debtor to prove one of the affirmative defenses set forth in subsections (A) or (B) by a preponderance of the evidence. *Id.* at 907, 909; *see Grogan v. Garner*, 498 U.S. 279, 291 (1991). A debtor can meet her burden by proving either that she cannot pay the debt or that the benefit to her of its discharge outweighs any detriment to the non-debtor spouse. *Molino*, 225 B.R. at 907-9. As subsections (A) and (B) of § 523(a)(15) are in the disjunctive, a debtor need not prove both to prevail. *Id.* at 907; *Baker v. Baker (In re Baker),* 274 B.R. 176, 197 (Bankr. D.S.C. 2000).

In this case, the bankruptcy court found that the marital debt at issue was a property settlement rather than a debt in the nature of alimony, maintenance or support. It further found that Appellant failed to meet her burden of proving that she is unable to pay the debt owed to Appellee or that the benefit to her of a discharge of the debt outweighs the harm to the Appellee. In so finding, the bankruptcy court first considered the combined monthly net household income of Appellant and her fiancé, which totaled approximately $2,400, reduced said income by their combined monthly expenses of $1,795, and determined that Appellant has a minimum excess income of $605 with which to repay Appellee. Next, the court applied the same calculations to the finances of Appellee, combining his income with that of his spouse. The court determined that Appellee has net family income of $5,000 and household expenses of $4,975, leaving him with excess income of only $25. The court also compared the lifestyles of the parties, noting that they differ in the level of income of the two households and in the fact that Appellee owns a home while Appellant is paying rent. The court further noted, however, that Appellee's household is "highly leveraged" and included a

$210,000 home purchased with no money down, $28,000 owed on a late model vehicle, $30,000 in credit card debt, and $50,100 owed on a debt consolidation loan. The court also considered the facts that the parties are similarly situated in terms of education in that neither has a college degree and that Appellant has obtained a discharge of unsecured obligations in the approximate amount of $10,000, while Appellee has total debt in the approximate amount of $318,000.

Appellant does not challenge the bankruptcy court's finding that the marital debt at issue is a property settlement in connection with the parties' divorce decree and is not in the nature of alimony, maintenance or support.   However, she challenges the bankruptcy court's consideration of her fiancé's income in finding that she failed to establish either that she does not have the ability to pay the marital debt owed to Appellee or that the benefit of a discharge of the debt does not outweigh the harm to Appellee.

Although the Sixth Circuit has not addressed the issue, most courts have held that the income of a debtor's new spouse or "romantic live-in companion" is relevant to determining the dischargeability of a marital debt under § 523(a)(15). *Short v. Short (In re Short)*, 232 F.3d 1018, 1023 (9th Cir. 2000) (citing cases). *But see Willey v. Willey (In re Willey)*, 198 B.R. 1007, 1014-15 (Bankr. S.D. Fla. 1996) (refusing to consider income of debtor's girlfriend stating that it might produce a "chilling effect on the courtship and re-marriage of divorced partners").   Courts have considered the income of a new spouse or romantic live-in companion in determinations of a debtor's ability to pay, *see, e.g., Short*, 232 F.3d at1024; *Messenger v. Messenger (In re Messenger)*, 331 B.R. 733, 738 (Bankr. N.D. Ohio 2005) (citing *Crosset v. Windom (In re Windom),* 207 B.R. 1017, 1021 (Bankr.W.D. Tenn. 1997) and finding that under the "ability to pay" test, a court may look to income of other non-debtor wage earners residing in the household)), as well as in the benefits-detriments analysis required under § 523(a)(15)(B), *see, e.g., Crosswhite ,*148 F.3d at 889 (finding that contributions of the debtor's live-in girlfriend are properly considered in determining whether the benefit to the debtor of discharge outweighed any detriment to non-debtor spouse).

In *Crosswhite,* the Seventh Circuit found that the bankruptcy court erred in failing to consider the contribution of the debtor's live-in girlfriend to his economic condition.  The court explained that "economic interdependence can result in a significant alteration of economic realities." *Crosswhite*, 148 F.3d at 889.   Given the equitable nature of the § 523(a)(15) inquiry, the court refrained from

setting forth a hard and fast rule regarding consideration of a live-in companion's economic contribution to the household. *Id.* at 888-89. Instead, the court adopted a "totality of the circumstances" approach, noting that such factors as the period of time the individuals have lived as a single economic unit and the degree to which they have commingled their assets are relevant. *Id.* at 889 n.17.

Citing extensively to *Crosswhite,* the Ninth Circuit found that consideration of the debtor's live-in romantic companion was properly considered in determining the debtor's ability to pay the marital debt owed to his ex-wife. *Short*, 232 F.3d at 1024. The court explained that while a bankruptcy court may choose not to consider the income of a live-in companion if such would result in a manifestly unfair judgment, a court may consider such income "whenever the debtor and his or her live-in romantic companion are economically interdependent or form a single economic unit." *Id.* Among factors to be considered in this determination are the length of the relationship and the extent to which the two commingle assets or share liabilities. *Id.*

In this case, the bankruptcy court did not make express findings regarding the degree of economic interdependence with respect to Appellant and her fiancé. However, it did state that it based its finding of a combined monthly household income on Appellant's testimony and that its determination of nondischargeability is based on the testimony and documents received into evidence at trial. In support of her arguments on appeal, Appellant contends that "there was no testimony as to the living arrangements or bill-sharing agreements between the debtor and her fiancé." (Apt. Brief, p. 8). Appellee, on the other hand, contends that "defendant testified in court that she and her fiancé live together . . . [and] share the costs of living evenly." (A'ee Brief, p. 14). Notwithstanding these arguments, the trial transcript is not part of the record on appeal. Absent a transcript, this Panel cannot determine the validity of Appellant's argument and cannot conclude that the bankruptcy court erred in considering the income and contributions of Appellant's fiancé in determining her ability to pay the marital debt and in comparing the parties' standards of living . *See* 6th Cir. B.A.P. LBR 8009-3(d) (providing that "the appendix shall include the portions of the transcript necessary for adequate review of the issues before the panel"). Having found that Appellant's monthly income in excess of expenses is over $600, and given the relatively modest amount of the marital debt owed to Appellee, the court did not err in finding that Appellant has the ability to pay the debt over a reasonable time. *See Messenger*, 331 B.R. at 739 (explaining that if

funds are available to pay the debt, it must then be decided whether the debtor can pay the debt within a reasonable amount of time).  The bankruptcy court also  applied well established factors in finding that Appellant failed to meet her burden of showing that the benefit of a discharge of the marital debt outweighs any harm to Appellee.  *See Molino,* 225 B.R. at 909 (citing *In re Smithers*, 194 B.R. 102 (Bankr. W.D. Ky. 1996)).  The facts are not in dispute and the Panel finds no error in the bankruptcy court's determination.

## V.   CONCLUSION

For the foregoing reasons, the bankruptcy court's order determining the marital debt owed to Appellee by Appellant to be nondischargeable is AFFIRMED.