

FILED

AUG 2 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

In re:

DOUGLAS E. PEERY,

Debtor.

DOUGLAS E. PEERY,

Appellant,

v.

MEGAN ESCOBAR,

Appellee.

BAP No.   AZ-18-1311-FLB

Bk. No.    4:17-bk-13595-BMW

Adv. Pro. 4:18-ap-00064-BMW

**MEMORANDUM**<sup>*</sup>

Argued and Submitted on July 18, 2019
at Phoenix, Arizona

Filed – August 2, 2019

Appeal from the United States Bankruptcy Court
for the District of Arizona

---

<sup>*</sup> This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Brenda Moody Whinery, Bankruptcy Judge, Presiding

---

Appearances:    Andrew A. Harnisch of May Potenza Baran & Gillespie, P.C. argued for appellant Douglas E. Peery; Richard Luff argued for appellee Megan Escobar.

---

Before: FARIS, LAFFERTY, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor Douglas E. Peery agreed to pay his then-wife, appellee Megan Escobar, approximately $351,000. They entered into a postnuptial agreement that confirmed how the debt would be treated if they divorced. Mr. Peery and Ms. Escobar later separated and entered into a marital settlement agreement, which reaffirmed Mr. Peery's personal obligation to Ms. Escobar. When Mr. Peery filed for bankruptcy protection, the bankruptcy court held that his debt to Ms. Escobar was nondischargeable under § 523(a)(15). On appeal, Mr. Peery argues that the bankruptcy court erred because the prepetition debt was not "incurred . . . in the course of a divorce . . . or in connection with a separation agreement [or] divorce decree . . . ."

We hold that the debt was "incurred . . . in connection with" the

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

parties' divorce. Accordingly, we AFFIRM.

## FACTUAL BACKGROUND[2]

### A.    Prepetition events

Before they married, Mr. Peery and Ms. Escobar formed a commercial contracting company, Ventura-Pacific Development, Inc. ("VPD"). In 2011, VPD agreed to purchase Ms. Escobar's shares in the company for $351,000 pursuant to a stock redemption agreement ("Stock Redemption Agreement"). Mr. Peery signed the Stock Redemption Agreement and a promissory note ("Note") on behalf of VPD as its president and CEO.

Mr. Peery and Ms. Escobar married in April 2012.

On December 31, 2012, the parties entered into an addendum ("Addendum") to the Stock Redemption Agreement and a postnuptial agreement ("Postnuptial Agreement"). The Addendum provided that: Mr. Peery became the maker of the Note; he assumed all responsibility and liability to fulfill the terms of the Stock Redemption Agreement and Note; the value of the Note was reset to its original amount; and all previous payments would be considered a gift to Ms. Escobar.

The Postnuptial Agreement provided that, in the event of dissolution of the marriage, VPD would be awarded to Mr. Peery, and Mr. Peery

---

[2] We exercise our discretion to review the bankruptcy court's docket, as appropriate. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

would have to buy out Ms. Escobar's community interest in VPD by paying her half of the value of VPD minus the principal sum of the Note. It also specified that the Note was Ms. Escobar's sole and separate property. It provided that, if the parties divorced, the Postnuptial Agreement would govern the allocation of their assets and debts.

At some point thereafter, the parties separated. They entered into a marital settlement agreement ("MSA") in May 2016. The MSA awarded "[a]ll right, title, and interest" in VPD to Mr. Peery and the Note to Ms. Escobar. Mr. Peery reaffirmed his obligation to Ms. Escobar under the Note and provided additional collateral:

> DOUG affirms his personal obligation to MEGAN pursuant to the pre-marital Promissory Note ("Note"). DOUG acknowledges the importance of timely payments on the Note, however, both parties acknowledge that the Note is not a domestic support order. DOUG agrees to secure the Note with a life insurance policy, naming MEGAN as the beneficiary of any amount equal to the outstanding balance of the Note.

The parties agreed to "forever release, waive and discharge the other from any and all claims upon the other for spousal maintenance, alimony or support of any kind or nature."

The state court approved the MSA, which then merged into the consent decree of dissolution of marriage ("Divorce Decree").

4

## B. Bankruptcy proceedings

On November 15, 2017, Mr. Peery filed his chapter 7 petition. He scheduled an unsecured debt totaling $209,548 due to Ms. Escobar.

Mr. Peery additionally filed an adversary complaint against Ms. Escobar, seeking a determination that the debt was dischargeable and not covered by §§ 523(a)(5) or (a)(15). He argued the Note was a premarital debt and was not a domestic support obligation under § 523(a)(5) or a debt incurred in the course of a divorce or in connection with a divorce decree under § 523(a)(15).

Ms. Escobar filed a motion for summary judgment ("Escobar MSJ"). She argued that the debt was a nondischargeable marital debt under § 523(a)(15). She contended that the debt arose out of a divorce and was ordered in the Divorce Decree so was "incurred" in connection with the Divorce Decree. She also requested attorneys' fees under a state statute.

Mr. Peery opposed the Escobar MSJ, arguing that the Note was a premarital, commercial debt that did not arise out of the parties' divorce. He argued that the MSA did not create any independent basis for repayment and did not modify the obligations between the parties.

Mr. Peery filed a motion for partial summary judgment ("Peery MPSJ") seeking a determination that the debt was not a domestic support obligation under § 523(a)(5). In response, Ms. Escobar appeared to agree that the debt was not a domestic support obligation.

Following a hearing on the Escobar MSJ and the Peery MPSJ, the bankruptcy court issued its decision granting the Escobar MSJ and denying as moot the Peery MPSJ.

It stated that § 523(a)(15) requires three elements: (1) that the debt is owed to the debtor's former spouse; (2) that the debt is not a support obligation under § 523(a)(5); and (3) that the debt was incurred in the course of a divorce or separation or in connection with a separation or divorce decree. The court held that the first two elements were not disputed: the alleged debt is owed to Ms. Escobar, and the parties agreed that the debt is not a domestic support obligation. As such, the only question was whether the debt was "incurred" by Mr. Peery in the course of or in connection with the divorce.

The court noted that the Bankruptcy Code does not define when a debt is "incurred." Nevertheless, it stated that the Ninth Circuit has broadly applied § 523(a)(15) under *Short v. Short (In re Short)*, 232 F.3d 1018 (9th Cir. 2000), to include even prepetition debt that is incorporated into a divorce decree.

The bankruptcy court concluded that the debt was initially commercial in nature but became Mr. Peery's personal debt by virtue of the Addendum. It stated that the Note and Mr. Peery's personal obligation to satisfy the Note were incorporated into the Postnuptial Agreement as well as the MSA, which was in turn incorporated into the Divorce Decree. The

court noted that the MSA required Mr. Peery to "secure" the Note with a life insurance policy naming Ms. Escobar as the beneficiary. As such, because the Divorce Decree explicitly incorporated Mr. Peery's obligation under the Note, the bankruptcy court concluded that the debt was incurred in connection with the Divorce Decree.

Therefore, the court held that the debt was nondischargeable under § 523(a)(15) and granted the Escobar MSJ but denied Ms. Escobar's request for fees. It held that the Peery MPSJ was therefore moot.

Mr. Peery timely appealed.

## C. The motion for sanctions

After briefing closed in this appeal, Ms. Escobar filed a motion for sanctions under Rule 8020 ("Sanctions Motion"). The BAP motions panel deferred ruling on the Sanctions Motion pending the outcome of this appeal.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court erred in holding that the Note is nondischargeable under § 523(a)(15).

(2) Whether Ms. Escobar is entitled to an award of attorneys' fees and costs under Rule 8020.

## STANDARD OF REVIEW

When reviewing a bankruptcy court's determination of an exception to discharge claim, we review its findings of fact for clear error and its conclusions of law de novo, *see Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 28 (9th Cir. BAP 2009), including its interpretation of the Bankruptcy Code, *see Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Id.* (citations omitted).

## DISCUSSION

### A. The bankruptcy court did not err in holding that the debt was nondischargeable under § 523(a)(15).

The narrow question of law on appeal concerns whether Mr. Peery's debt to Ms. Escobar – first created by the Addendum, but immediately incorporated into the Postnuptial Agreement and subsequently incorporated into the MSA and Divorce Decree – constitutes a debt that Mr. Peery "incurred . . . in the course of a divorce or separation or in connection with a separation agreement [or] divorce decree . . . ." Based on the Ninth Circuit's decision in *Short* and the facts of this case, we hold that this debt falls under § 523(a)(15).

Section 523(a)(15) excepts from discharge any debt:

to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) **that is incurred by the debtor in the course of a divorce or separation or in connection with**

8

**a separation agreement, divorce decree or other order of a court of record**, or a determination made in accordance with State or territorial law by a governmental unit[.]

§ 523(a)(15) (emphasis added). Thus, a creditor must establish three elements:

> (1) that the debt in question is owed to a former spouse of the debtor; (2) that the debt is not a support obligation within the meaning of § 523(a)(5); and (3) that the debt was incurred in the course of a divorce or separation or in connection with a separation agreement, divorce decree, or other order of a court of record.

*Adam v. Dobin (In re Adam)*, BAP No. CC-14-1416-PaKiTa, 2015 WL 1530086, at *6 (9th Cir. BAP Apr. 6, 2015), *aff'd*, 677 F. App'x 353 (9th Cir. 2017) (citing *Taylor v. Taylor (In re Taylor)*, 478 B.R. 419, 428 (10th Cir. BAP 2012)).

The Ninth Circuit construed § 523(a)(15) in *Short*. The debtor, Mr. Short, borrowed money from Ms. Short before and after they married to finance the purchase of a truck and pay off a debt to a prior spouse. Two months after they wed, they entered into a postnuptial agreement to memorialize the debt. 232 F.3d at 1020. The postnuptial agreement provided that Mr. Short's obligation to repay the $50,000 debt was incurred prior to marriage and that the debt was Ms. Short's separate property. *Id.* at 1021. However, if the marriage lasted more than three years, the debt would be canceled. *Id.*

A few weeks later, the parties separated, and Mr. Short filed for

divorce. The parties agreed to divide the assets largely pursuant to the postnuptial agreement; Ms. Short also received a boat. Regarding the $50,000 loan, the parties agreed to deduct half of the value of the boat and the amount previously paid toward the loan. The stipulated judgment recognized that "[Mr. Short] owed to [Ms. Short] the principal sum of $41,450. . . . [Mr. Short] shall pay the sum of $600 per month to [Ms. Short] until such time as the loan is paid." *Id.*

Mr. Short later filed a chapter 7 bankruptcy petition. Ms. Short filed an adversary complaint to determine that the debt was nondischargeable under § 523(a)(15). The bankruptcy court concluded that the debt was "incurred in connection with the parties' divorce" and that the debt was nondischargeable. *Id.* This Panel affirmed. *Id.* at 1022.

On appeal to the Ninth Circuit, Mr. Short argued that the debt was not "incurred . . . in the course of a divorce or separation" under § 523(a)(15). He contended that the loan was made before the divorce and that at least a portion of it was transferred to him before marriage. He concluded that the loan was separate property debt incurred prior to marriage. *Id.*

The Ninth Circuit disagreed. It held that "Mr. Short's contention that his $50,000 loan from Ms. Short is not divorce-related, even though the terms of its repayment were expressly incorporated into the decree of dissolution, lacks merit." *Id.* at 1022-23 (citing *In re Crosswhite*, 148 F.3d 879,

881-82 (7th Cir. 1998)). The court concluded that, "[b]ecause Mr. Short's debt to Ms. Short was incurred by him as part of a division of property under the terms of a judgment of dissolution, we conclude that the debt was incurred in connection with a divorce decree and therefore subject to § 523(a)(15)." *Id.* at 1024.

The material facts of this case are indistinguishable from *Short*. Similar to the debtor in *Short*, Mr. Peery owed a debt to Ms. Escobar.[3] In both cases, the debt was incorporated into a postnuptial agreement and reaffirmed in a divorce settlement and decree. The Ninth Circuit held that Mr. Short's debt to Ms. Short was nondischargeable under § 523(a)(15); for the same reasons, Mr. Peery's debt to Ms. Escobar is also nondischargeable.

Indeed, Mr. Peery's debt to Ms. Escobar is exactly the kind of debt that § 523(a)(15) usually covers. That section most commonly applies to "equalization payments," or debts owed by one spouse to the other in order to equalize the allocation of assets and debts between them. *See generally Berse v. Langman (In re Langman)*, 465 B.R. 395, 405 (Bankr. D.N.J. 2012) ("This provision has been read to encompass a range of matrimonial debts, including obligations arising out of property settlement agreements

---

[3] Mr. Short incurred his debt to Ms. Short partly before and partly after they were married. In contrast, Mr. Peery first became personally liable to Ms. Escobar after they married. *Short* provides no reason to think that this factual difference should change the outcome. If anything, it arguably makes Ms. Escobar's case stronger than Ms. Short's because Ms. Escobar's claim is more tightly connected to the marriage.

11

and equitable distribution judgments." (citation omitted)); *Bodily v. Morris (In re Morris)*, 193 B.R. 949, 950 (Bankr. S.D. Cal. 1996) (concerning a nondischargeability action under § 523(a)(15) where "[t]he equalization payment was intended by that court to equalize the responsibilities for payment of debts as well as the division of property between the parties"). The Postnuptial Agreement provides that, if they divorced, Mr. Peery would be entitled to own VPD, but he would have to buy Ms. Escobar's community interest in the company by paying her half of the value of the company less the principal amount of the Note. In other words, the parties agreed that, if they divorced, the Note would serve as part of an equalization payment. As such, the Note was nondischargeable under § 523(a)(15).

It is of no moment that the debt predated the divorce. Section 523(a)(15) applies to debts that are incurred "in the course of" a divorce or "in connection with" a separation agreement or divorce decree. The debts of one spouse to another under a prenuptial or postnuptial agreement are connected with a subsequent divorce; spouses (or prospective spouses) enter into such agreements precisely in order to predetermine what will happen in a subsequent divorce. *See Ruhlen v. Montgomery (In re Montgomery)*, 310 B.R. 169, 178 (Bankr. C.D. Cal. 2004) (rejecting the debtor's argument that a property division provision in a marital settlement agreement "only reaffirmed" the debtor's duty to pay the debt

12

and was thus outside the scope of § 523(a)(15)).

None of Mr. Peery's attempts to distinguish *Short* is persuasive.

First, he argues that § 523(a)(15) applies to "familial" obligations, not commercial obligations. The statutory language does not support this argument.[4] Neither does *Short*: Mr. Short owned a trucking company, and he used most of the money he borrowed from Ms. Short to buy a Peterbilt truck. *In re Short*, 232 F.3d at 1020. So, most of Mr. Short's debt was arguably commercial, yet the Ninth Circuit held it was not dischargeable.

Second, he says that *Short* only applies if the divorce decree changed the debt in some way. He argues that, in the present case, the Divorce

---

[4] Nor does the legislative history. In enacting § 523(a)(15), Congress appeared concerned with ensuring that the debtor spouse's bankruptcy did not deprive the non-debtor spouse of property that she needed to rely on for her livelihood:

> If such "hold harmless" and property settlement obligations are not found to be in the nature of alimony, maintenance, or support, they are dischargeable under current law. The nondebtor spouse may be saddled with substantial debt and little or no alimony or support . . . .

*In re Francis*, 505 B.R. at 919 (quoting 140 Cong. Rec. H 10770 (Oct. 4, 1994)). Thus, where the parties bargain for a certain distribution of assets, § 523(a)(15) is meant to protect the non-debtor spouse's right to certain property. *See In re Montgomery*, 310 B.R. at 178 ("Under the MSA, [spouse] relinquished valuable rights in [debtor's] pension plan and deferred compensation plan in exchange for the parties' equity in the . . . Property and his promise to pay one-half of the . . . Note secured by the property. [Debtor] reneged under the Judgment and sought to discharge his obligation in this case. In the court's view, [debtor's] action is precisely the tactic § 523(a)(15) was designed to prevent and [debtor's] obligation to [spouse] is exactly the type of debt § 523(a)(15) was intended to except from discharge.").

Decree did not.

He cites non-binding decisions so holding. *See, e.g., Sherman v. Proyect (In re Proyect)*, 503 B.R. 765, 775 (Bankr. N.D. Ga. 2013) (rejecting the notion that restating a debt in a divorce decree means that the debt was "incurred" in the course of a divorce, because "rendering every obligation to be nondischargeable simply because it is mentioned in a divorce settlement agreement seems to go far beyond what Congress intended"). But we are bound by *Short*. It is true that the divorce decree in *Short* modified Mr. Short's obligations in some respects. But the *Short* opinion does not even hint that this fact was relevant to the court of appeals' decision. To the contrary, it was enough that "the terms of [the debt's] repayment were expressly incorporated into the decree of dissolution . . . ." 232 F.3d at 1022-23. In the present case, there is no question that Mr. Peery's obligations under the Note were incorporated into the MSA and Divorce Decree. The Divorce Decree did not recite those obligations, but that is a formality that should not affect the substantive outcome.

Further, the MSA and Divorce Decree in this case did change Mr. Peery's obligation to Ms. Escobar. The MSA imposed the new obligation that Mr. Peery "secure" the Note with a life insurance policy naming Ms. Escobar as the beneficiary.[5] Mr. Peery argues that Ms. Escobar

---

[5] Mr. Peery initially argued that he did not take out a life insurance policy. (This

(continued...)

14

did not raise the issue before the bankruptcy court, so it was not fully developed in the bankruptcy court. We reject this argument. The MSA was part of the record; the bankruptcy court was free to read it and make appropriate rulings.

Therefore, the bankruptcy court did not err in holding that the debt was "incurred . . . in connection with a separation agreement [or] divorce decree" and that the debt was nondischargeable under § 523(a)(15).

**B.     Ms. Escobar is not entitled to her fees and costs on appeal.**

Ms. Escobar argues that this appeal is frivolous and that she is entitled to her attorneys' fees and costs on appeal. We disagree.

Rule 8020, which conforms to the language of Federal Rule of Appellate Procedure ("FRAP") 38, provides that: "If the district court or BAP determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Rule 8020(a). Under FRAP 38, "a frivolous appeal is one where the result is obvious or the appellant's arguments are wholly without merit." *First Fed. Bank of Cal. v. Weinstein (In re Weinstein)*, 227 B.R. 284, 297 (9th Cir. BAP

---

[5](...continued)
argument implies that, if he had done what he agreed to do in the MSA, his debt would not be dischargeable, but it is dischargeable because he never carried out his promise. To state this argument is to refute it.) At oral argument, Mr. Peery's counsel clarified that Mr. Peery had taken out a life insurance policy and listed it in his schedules.

15

1998) (citations omitted). We may impose sanctions to penalize an appellant or attorney who pursues a frivolous appeal and to compensate the appellee for the delay and expense of defending the appeal. 10 Collier on Bankruptcy ¶ 8020.03 (Richard Levin & Henry J. Sommer eds., 16th ed.); *see Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 7 (1987).

Ms. Escobar argues that Mr. Peery's factual and legal positions on appeal are disingenuous, so the appeal is frivolous. However, her Sanctions Motion reads like an unauthorized surreply to Mr. Peery's reply brief. Although she couches her arguments in terms of frivolity (allegedly because the result is obvious), she uses the Sanctions Motion primarily to refute the arguments raised in the reply brief. This is a thinly-veiled attempt to get in the last word in this appeal.

In any event, we reject Ms. Escobar's argument. We cannot say that this appeal is frivolous or that Mr. Peery has otherwise abused the appellate process. *See In re Weinstein*, 227 B.R. at 297 ("Considered in their [entirety], the [appellant's] arguments, while not well taken, are not so wholly without merit as to warrant sanctions.").

## CONCLUSION

The bankruptcy court did not err in holding that the debt owed to Ms. Escobar was nondischargeable under § 523(a)(15). We AFFIRM. We DENY Ms. Escobar's Sanctions Motion.