FILED

FEB 13 2023

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>JILL SUZANN MEDLEY,<br><div align="right">Debtor.</div> | BAP No. CC-22-1167-FLC<br><br>Bk. No. 6:20-bk-11768-SY |
| PRECISION BUSINESS CONSULTING, LLC,<br><div align="right">Appellant,</div><br>v.<br>JILL SUZANN MEDLEY,<br><div align="right">Appellee.</div> | **MEMORANDUM**\* |

Appeal from the United States Bankruptcy Court
for the Central District of California
Scott H. Yun, Bankruptcy Judge, Presiding

Before: FARIS, LAFFERTY, and CORBIT, Bankruptcy Judges.

## INTRODUCTION

Precision Business Consulting, LLC ("Precision") appeals the

bankruptcy court's determination that it violated the automatic stay when

it attempted to collect a real estate sales commission claimed by chapter 13[1]

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal

debtor Jill Suzann Medley. It argues that it was a "factor" that owned Ms. Medley's right to receive the commission, rather than a creditor with a security interest in the commission; thus, the commission was not property of the bankruptcy estate and not subject to the automatic stay.

The bankruptcy court held an evidentiary hearing and determined that Precision was a secured creditor and that its attempts to collect the commission violated the automatic stay. The court sanctioned Precision $20,000 to compensate Ms. Medley for a portion of her attorneys' fees.

We discern no reversible error and AFFIRM.

## FACTS

### A.     Prepetition events

Ms. Medley is a licensed real estate broker. She listed for sale a property located in Lake Elsinore, California (the "Property"), owned by Sun O. Park. In or around March 2019, Ms. Park accepted an offer to purchase the Property.

About a month later, Ms. Medley entered into a set of agreements with Precision. Under the agreements, Ms. Medley assigned a portion of the anticipated commission ($46,753) to Precision, and Precision agreed to make an immediate "advance" to Ms. Medley of $35,070 and pay an additional $7,010 when it received the commission. The agreements referred to Precision as the assignee and purchaser of the commission, but

Rules of Bankruptcy Procedure.

2

they also created a security interest, not only in that commission, but also in all of Ms. Medley's other commissions. Ms. Medley also agreed to let Precision hold the deed to her house as additional collateral. The agreements obligated Ms. Medley to assign replacement commissions to Precision if Ms. Park's sale did not close. Further, Ms. Medley was responsible for "full liability in the event settlement fails to occur pursuant to the terms of [Ms. Park's pending purchase contract]."

The anticipated sale did not close. Ms. Medley withdrew the sale listing for the Property, allegedly because Ms. Park changed her mind about selling the property.

## B.    Ms. Medley's bankruptcy case

The day after she withdrew the sale listing, Ms. Medley filed a chapter 13 petition. She did not list Precision as a creditor on her schedules or creditor mailing list. However, she listed an affiliated business, Escrow Cash Advance, LLC, as holding a claim (arising from a separate transaction) and included Escrow Cash Advance on the mailing list at the same address as Precision. James Cooper is the CEO of Precision and also works for Escrow Cash Advance.

Precision filed a proof of claim contending that it held a secured claim of $53,405.32. The proof of claim indicated an 18% annual interest rate and included a handwritten notation claiming "default interest" totaling nearly $6,000. Mr. Cooper, on behalf of Precision, signed the proof of claim and checked the box indicating "I am the creditor."

Ms. Medley objected to Precision's proof of claim, contending that Precision's debt was properly a general unsecured claim. She disclosed that, after she filed her petition, she had relisted the Property and anticipated receiving a commission totaling approximately $75,000 within a month.

In response to Ms. Medley's objection to the proof of claim, Precision argued that it was not a lender; rather, it was "a factoring company that purchases receivables . . . . Factors don't loan money." It said that it became immediately entitled to its portion of the commission when Ms. Medley procured a buyer for the Property prepetition. Therefore, Precision argued that it owned the assigned portion of the commission and that Ms. Medley and her bankruptcy estate did not own that portion. Precision also argued that it was a secured creditor because it secured its purchase of the receivable with a UCC filing.

In the meantime, Precision took steps to obtain payment of the commission on the new sale of Ms. Park's property. Mr. Cooper made demands on Ms. Park, Ms. Medley, the escrow agent for Ms. Park's sale, and the sellers of other properties that Ms. Medley had listed for sale. Precision did not seek or obtain relief from the automatic stay.

Later, the bankruptcy court dismissed Ms. Medley's chapter 13 case. At some point thereafter, the sale of the Property closed, and Ms. Medley retained the entire commission for herself.

## C.    The order to show cause

Ms. Medley filed a motion for an order to show cause why Precision should not be held in contempt for violation of the automatic stay. She argued that Precision had notice of her March 2020 bankruptcy filing, yet it directly contacted her and Ms. Park, demanding payment of the commission earned postpetition. She cited §§ 362(k) and 105 and requested that the court impose civil contempt sanctions of $20,000 for violation of a court order.

Precision opposed the motion. It argued that Precision was a factor that owned a portion of the commission, not a lender whose collateral included the commission. Precision argued that it did not violate the automatic stay because it only acted to protect its own asset that it had purchased prepetition.

At the hearing on the motion, the bankruptcy court asked Ms. Medley's counsel whether she wished to seek a remedy for the stay violation under § 362(k), in which event she would have to commence an adversary proceeding, or instead seek sanctions in civil contempt proceedings under § 105, in which case she would have to ask the court to issue an order to show cause. Counsel responded that Ms. Medley would proceed in an adversary proceeding. But she evidently changed her mind because she did not commence an adversary proceeding; rather, she merely refiled a substantially similar motion.

The bankruptcy court granted the motion and entered an order (the

"OSC") requiring Precision to "show cause why the court should not impose civil contempt sanctions against [Precision] in an amount up to $20,000 under the court's inherent sanctioning authority for violating the automatic stay . . . ." The OSC did not cite § 362(k), but the court "reserve[d] the right to impose alternate sanctions or sanctions on alternate grounds as may be warranted by the evidence or argument presented in connection with this order to show cause."

Precision responded to the OSC and repeated its earlier arguments; it did not claim that Ms. Medley had to commence an adversary proceeding.

In her reply memorandum, Ms. Medley argued that, under the Ninth Circuit's "transfer-of-risk" test, Precision was in reality a secured creditor and not a buyer of the commission.

The bankruptcy court required the parties to submit a joint pretrial stipulation. Ms. Medley eventually submitted a proposed pretrial stipulation, apparently without Precision's input or cooperation. The pretrial stipulation included Ms. Medley's eleven exhibits but did not list any for Precision.

In February 2022, the bankruptcy court held a continued pretrial conference and scheduled an evidentiary hearing. The court directed Precision to file a trial brief laying out its legal argument that it was a factor that could not violate the automatic stay. It also approved the pretrial stipulation as submitted (i.e., with the admitted facts and without Precision's input as to exhibits, witnesses, and legal and factual issues).

Precision does not challenge that order in this appeal.

The parties filed their respective trial briefs, although Precision filed its brief late, only two days before trial.

## D.    The evidentiary hearing

The bankruptcy court held the evidentiary hearing on March 16, 2022. Ms. Medley and Mr. Cooper were the only witnesses who testified. The bankruptcy court admitted all of the exhibits previously identified by Ms. Medley and precluded Precision from introducing additional exhibits or making oral motions.

Ms. Medley testified about the correspondence that she and her clients received from Precision. She said that Mr. Cooper threatened her multiple times on the phone and came to her residence and pounded on her door. She testified that she considered the advance a loan. She explained that she was "borrowing funds from the future, that I could pay back soon as one of my properties sold, and I identified which property that would be."

Mr. Cooper testified that he sent correspondence to Ms. Park and Ms. Medley to preserve Precision's legal rights to the commission. He denied that he ever called Ms. Medley to discuss the commission, went to her residence, or threatened her. Rather, he testified that Ms. Medley called him postpetition and assured him that he would be paid at the close of escrow. Instead, when she received and kept the commission, "she stole the money."

Mr. Cooper requested that "we state for a matter of record that I'm a secured creditor[.]" His counsel agreed but also qualified, "[J]ust to be clear, we dispute that [Precision] is a lender."

Mr. Cooper testified that Precision "exclusively acts as a factor. . . . It has never once done a loan." He explained why he believed that Precision was not a lender and its portion of the commission was not part of the bankruptcy estate subject to the automatic stay.

The bankruptcy court made an extensive oral ruling at the conclusion of the hearing and at a further hearing on Precision's objection to Ms. Medley's proposed order. The court determined that Precision had received actual notice of Ms. Medley's bankruptcy filing.

The bankruptcy court rejected Precision's position that it was a factor that had purchased the account receivable prepetition, rather than a secured creditor holding a claim subject to the automatic stay. It relied on Precision's judicial admissions that it was a creditor in both its filings and Mr. Cooper's testimony. It also held that, while Precision attempted to label its transaction as a true purchase, the transaction was in substance a disguised financing agreement.

The bankruptcy court thus concluded that Precision willfully violated the automatic stay when Mr. Cooper, on behalf of Precision, made demands on Ms. Park and Ms. Medley.

The court held that, under the U.S. Supreme Court's decision in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019), an objective standard applies to

stay violations, and a subjective good-faith belief will not negate a violation. It continued, "I don't think there's a real honest objective good-faith belief that [Precision] could rely on to say it shouldn't be sanctioned."

The bankruptcy court awarded a sanction of $20,000. It observed that Ms. Medley's counsel had provided evidence of about $26,000 of attorneys' fees and that, even if some of those fees were unreasonable, the amount would be at least $20,000. The court repeatedly stated that it wished it could award a larger sanction but believed that it could not because the OSC sought only that amount.

In its written order, the bankruptcy court decided that "$20,000 amounts to an appropriate civil sanction award in the context of this case for Precision's willful violation of the automatic stay under 11 U.S.C. § 362(k)." The court ordered Precision to "pay a civil sanction for actual damages incurred by [Ms. Medley] in the form of her attorney's fees and costs in the amount of $20,000 . . . ."

Precision timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(a) and (b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in sanctioning Precision for violation of the automatic stay.

9

## STANDARDS OF REVIEW

"A bankruptcy court's determination that the automatic stay was violated is a question of law subject to de novo review." *Yellow Express, LLC v. Dingley (In re Dingley)*, 514 B.R. 591, 595 (9th Cir. BAP 2014), *aff'd on other grounds*, 852 F.3d 1143 (9th Cir. 2017). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

We review for an abuse of discretion the bankruptcy court's imposition of contempt sanctions. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003); *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1213 (9th Cir. 2002) ("The amount of sanctions imposed for a willful violation of the stay is reviewed for an abuse of discretion."). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support from evidence in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

We review the court's underlying factual findings, including whether the violation was willful, for clear error. *Eskanos & Adler, P.C.*, 309 F.3d at 1213. Findings of fact are clearly erroneous only if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). We give particular deference to the bankruptcy court's credibility findings. *Id.* If two views of the evidence are possible, the court's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985).

We may affirm on any basis supported by the record. *Black v. Bonnie Springs Family Ltd. P'ship (In re Black)*, 487 B.R. 202, 211 (9th Cir. BAP 2013).

## DISCUSSION

**A.** **The bankruptcy court did not err in determining that Ms. Medley's right to receive the commission was subject to the automatic stay.**

### 1. The transaction was a secured loan in substance.

Precision's primary argument on appeal is that it was a "factor" that purchased and owned the right to receive a portion of the commission, not a lender that made a loan secured by the commission. The bankruptcy court did not err when it ruled against Precision.

"Factoring" is described as "[t]he buying of accounts receivable at a discount. The price is discounted because the factor (who buys them) assumes the risk of delay in collection and loss on the accounts receivable." *Produce Pay, Inc. v. FVF Distribs. Inc.*, 468 F. Supp. 3d 1304, 1309 n.3 (S.D. Cal. 2020) (quoting BLACK'S LAW DICTIONARY 612 (7th ed. 1999)).[2]

The bankruptcy court applied the familiar principle that the legal consequences of a transaction are based on its economic substance rather than its form. California courts have applied this principle in many

---

[2] Similarly, the California Financial Code defines "factoring" as "an accounts receivable purchase transaction that includes an agreement to purchase, transfer, or sell a legally enforceable claim for payment held by a recipient for goods the recipient has supplied or services the recipient has rendered that have been ordered but for which payment has not yet been made." Cal. Fin. Code § 22800(i).

contexts, such as usury. *See Boerner v. Colwell Co.*, 21 Cal. 3d 37 (1978) ("A loan . . . is the delivery of a sum of money to another under a contract to return at some future time an equivalent amount with or without an additional sum agreed upon for its use; and if such be the intent of the parties the transaction will be deemed a loan regardless of its form.").

The same basic principle applies to transactions involving accounts receivable. Whether a transaction is a sale or loan is a factual determination that is based on the substance of the agreement:

> Accounts receivable financing is an uncertain area in the usury law and no exact tests have been formulated. **The question whether a transaction is a sale or a usurious loan is one of fact and the trier of fact should look to substance rather than to form.** We must determine whether there is any substantial evidence to support the findings and, where a finding of either a loan or a sale can be inferred from the facts, we may not substitute our judgment for that of the trial court.

*Baruch Inv. Co. v. Huntoon*, 257 Cal. App. 2d 485, 492 (1967) (citations omitted) (emphasis added).

The Ninth Circuit discussed factoring in another context in *S & H Packing & Sales Co. v. Tanimura Distribution, Inc.*, 883 F.3d 797 (9th Cir. 2018) (en banc). The plaintiffs were growers who had sold produce to a distributor on credit. The distributor in turn resold the produce on credit and "sold" the resulting accounts receivable to a factor. The distributor's business failed, and it did not pay the growers. The growers sued the distributor and the factor, arguing that the distributor held the produce

12

and the proceeds of its sale in trust under the Perishable Agricultural Commodities Act ("PACA") and that the distributor's "sale" of the proceeds of the produce to the factor was a violation of the PACA trust. The parties agreed that a PACA trustee (such as the distributor) may sell assets of a PACA trust (such as produce and its proceeds) on commercially reasonably terms without breaching the PACA trust. But the court held that this rule applies only if the transaction was a "true sale" and not a secured loan. *Id.* at 801-02.

The court observed that the agreement between the distributor and the factor was styled as a sale but "involved some hallmarks of a secured lending arrangement[.]" *Id.* at 799. For example, the factor "was granted security interests in accounts receivable and all other asset classes except inventory; UCC financing statements were filed; other debts were subordinated; and there was a measure of recourse for [the factor] against [the distributor] if [the factor] could not collect from [the distributor's] customers . . . ." *Id.* In particular, the Ninth Circuit held "that a transfer of the primary or direct risk of non-payment on the accounts is the hallmark of a true sale." *Id.* at 808.[3]

In this case, the substance of the transaction and the parties' intent support the bankruptcy court's finding that the agreement was a disguised

---

[3] Although *S & H Packing & Sales* concerned a PACA transaction, there is no reason to think that its analysis of whether a factoring agreement is a "true sale" or actually a secured loan is inapplicable in other contexts.

loan. Although Precision sometimes called the transaction a "sale," the substance of the agreement was otherwise. Ms. Medley agreed that she would "have full liability in the event settlement fails to occur." Thus, she bore the entire risk that the commission would not be paid; Precision bore that risk only indirectly, to the extent that Ms. Medley might be unable to pay Precision if she did not receive the commission. Ms. Medley also expressly granted Precision a security interest, not only in the commission against which Precision made an advance, but also in all of her present and future accounts receivable and her residence. She testified that she believed that she was "borrowing funds from the future" that she had to repay. Although Mr. Cooper testified otherwise, the bankruptcy court found him not credible.

Furthermore, Precision's conduct and admissions support the bankruptcy court's finding that the transaction was a loan in substance. It repeatedly identified itself as a secured creditor, including in its proof of claim. The proof of claim also demanded 18% interest on the debt. At trial, Mr. Cooper insisted that he would "stipulate" that Precision is a secured creditor.[4]

---

[4] Standing alone, this factor might not be determinative. Article 9 of the Uniform Commercial Code provides that it applies to (among other things) "[a] transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract" and "[a] sale of accounts, chattel paper, payment intangibles, or promissory notes" (subject to certain exceptions). Cal. Com. Code §§ 9109(a)(1), (a)(3), (d)(4)-(7). In other words, some "true sales" of accounts are governed by Article 9 and some "true buyers" are treated as "secured parties." But this does not detract from the bedrock

Based on these factors, the bankruptcy court did not err when it found that the agreement was not a true sale, but rather a secured loan, and that the right to receive the commission was property of the bankruptcy estate protected by the automatic stay.[5] We must not second-guess that finding. *See W. Pico Furniture Co. v. Pac. Fin. Loans*, 2 Cal. 3d 594, 603-04 (1970) ("[T]he role of an appellate court is to determine whether there is any substantial evidence to sustain the finding of the trier of fact, and, where a finding of either a loan or a sale can be inferred from the facts, we may not substitute our judgment for that of the trial court." (cleaned up)).

## 2.   The bankruptcy court did not err in ruling on a contested matter rather than an adversary proceeding.

Precision argues that the bankruptcy court erred in deciding this matter as a contested matter because Rule 7001(2) requires an adversary proceeding to determine the recharacterization of a debt. It relies on our unpublished decision in *Jahr v. Frank (In re Jahr)*, BAP No. EW-11-1538-MkHJu, 2012 WL 3205417, at *4 (9th Cir. BAP Aug. 1, 2012), which also concerned a stay violation, for the proposition that a Rule 7001(2) proceeding "must be brought as an adversary proceeding. And it is settled

---

principles that substance controls over form, and that a transaction labeled as a sale should be treated as a secured loan if that is its substance.

[5] Precision argues that Ms. Medley earned the commission when she procured a ready, willing, and able buyer, and that she was entitled to the commission on the petition date. We need not address this argument. No matter when Ms. Medley earned the commission, Precision did not own it, and the automatic stay barred Precision's efforts to seize it.

law in this circuit that it is error for a bankruptcy court to determine property interests outside of an adversary proceeding."

Precision's argument exposes some confusion in the record. The bankruptcy court initially said that, if Ms. Medley wished to proceed under § 362(k), she would have to commence an adversary proceeding. But even though Ms. Medley opted to file a motion commencing a contested matter rather than a complaint commencing an adversary proceeding, and even though the court did not cite § 362(k) in its OSC, the court relied on that section in its written ruling.

Nevertheless, we disagree that an adversary proceeding was required in this case.

First, Precision never requested an adversary proceeding. Even when the bankruptcy court spent considerable time weighing an adversary proceeding versus a contested matter, Precision remained silent.[6] It has waived this point of error.

Second, even if the bankruptcy court should have required an adversary proceeding, its failure to do so was harmless. *Id.* at *5 ("If the bankruptcy court's circumvention of the adversary proceeding requirement was harmless, this Panel need not reverse on that basis."). We are to consider whether:

(1) the material facts were few and undisputed, (2) the

---

[6] At oral argument, this Panel asked Precision's counsel to identify where in the record Precision demanded an adversary proceeding. Counsel conceded that there was no demand.

dispositive issues were pure questions of law, (3) neither party expressed any discontent with the contested matter procedures the bankruptcy court utilized, and (4) this Panel was "satisfied that neither the factual record nor the quality of the presentation of the arguments would have been materially different had there been an adversary proceeding."

*Id.* (quoting *Ruvacalba v. Munoz (In re Munoz)*, 287 B.R. 546, 550 (9th Cir. BAP 2002)).

Precision was not prejudiced. Considering the first two *Munoz* factors, although there were factual disputes, the court held an evidentiary hearing to resolve them, and Precision does not identify any relevant differences between that evidentiary hearing and a trial in an adversary proceeding. Considering the third and fourth factors, neither party expressed dissatisfaction with the nature of the proceedings at the time or demanded an adversary proceeding. Given that Precision did not participate in the joint pretrial stipulation, ignored the court's orders, and was unprepared for the evidentiary hearing, an adversary proceeding would not have changed the outcome.

**B.      The bankruptcy court did not err in sanctioning Precision.**

We must first ascertain the legal basis on which the bankruptcy court relied. In this respect, the record is not perfectly clear.

In its oral ruling, the court suggested that it would rely on its civil contempt power. But the written order refers to "civil contempt sanctions" only in passing; the last (and most explicit) paragraph of the order refers

17

only to a "civil sanction" under § 362(k), and not a "civil contempt sanction." The change in the court's rationale between its oral rulings and its final written order does not warrant any relief on appeal. *See Rawson v. Calmar S.S. Corp.*, 304 F.2d 202, 206 (9th Cir. 1962) ("The trial judge is not to be lashed to the mast on his off-hand remarks in announcing decision prior to the presumably more carefully considered deliberate findings of fact.").

Accordingly, we will evaluate the order under § 362(k).

That section provides that, subject to an exception that does not apply here, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." *See Am.'s Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard)*, 803 F.3d 1095, 1100 (9th Cir. 2015) (en banc) (discussing the history and liberal application of § 362(k) and stating "that Congress sought to encourage injured debtors to bring suit to vindicate their statutory right to the automatic stay's protection, one of the most important rights afforded to debtors by the Bankruptcy Code"). In other words, § 362(k) "makes an award of actual damages and attorney's fees mandatory, and grants bankruptcy courts the discretion to impose punitive damages in appropriate cases." *Id.* at 1099.

The record supports a determination that the elements of § 362(k) are met.

First, there is no question that Ms. Medley is an "individual."

18

Second, as we have discussed, we agree with the bankruptcy court that Precision violated the stay. Precision does not deny that, if the right to receive the commission was property of the estate, Precision's efforts to intercept the commission violated the automatic stay.[7] *See* § 362(a)(3), (6).

Third, the bankruptcy court's findings are sufficient to support a determination that Precision's violation was "willful." In this circuit, "[a] willful violation is satisfied if a party knew of the automatic stay, and its actions in violation of the stay were intentional." *Koeberer v. Cal. Bank of Commerce (In re Koeberer)*, 632 B.R. 680, 687 (9th Cir. BAP 2021) (quoting *Eskanos & Adler, P.C.*, 309 F.3d at 1215); *see also Morris v. Peralta (In re Peralta)*, 317 B.R. 381, 389 (9th Cir. BAP 2004) ("No specific intent is required; a good faith belief that the stay is not being violated is not relevant to whether the act was 'willful' or whether compensation must be awarded." (cleaned up)).

Precision does not seriously deny that it had actual knowledge of Ms. Medley's bankruptcy filing. Although Precision was not initially

---

[7] Precision argues that the U.S. Supreme Court's decision in *City of Chicago v. Fulton*, 141 S. Ct. 585 (2021), supports its position that it did not violate the automatic stay, because Mr. Cooper's communication with Ms. Park and Ms. Medley sought only to preserves the status quo. But *Fulton* is inapplicable; it concerned whether the automatic stay requires a creditor in possession of estate property to return that property to the debtor. The Court held that passive retention of such property does not violate the stay. *Id.* at 589 ("The question in this case is whether an entity violates that prohibition by retaining possession of a debtor's property after a bankruptcy petition is filed. We hold that mere retention of property does not violate § 362(a)(3)."). Unlike the City of Chicago, which did nothing, Precision took active steps to collect its debt.

scheduled as a creditor or included in the creditor matrix, it filed a timely proof of claim. The joint pretrial statement also included as an admitted fact that Precision received proper notice of the bankruptcy case.

Similarly, Precision cannot deny that its acts were intentional. Mr. Cooper did not contact Ms. Park, Ms. Medley, the escrow agent for Ms. Park's sale, and Ms. Medley's other clients by mistake.

In its oral ruling, the bankruptcy court focused on civil contempt rather than § 362(k). The court did not refer to the Ninth Circuit's definition of "willful" for an automatic stay violation under § 362(k). Instead, the bankruptcy court cited the standard enunciated in *Taggart* for civil contempt sanctions based on a violation of the discharge injunction. 139 S. Ct. at 1804 ("A court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order."). *Taggart* concerned the discharge injunction and did not decide what standard applies when sanctions are sought under § 362(k) for a violation of the automatic stay. *Id*. at 1803-04.

The bankruptcy court held that this standard was met because there was no "real honest objective good-faith belief that [Precision] could rely on to say it shouldn't be sanctioned." This satisfies the *Taggart* standard that there be "no objectively reasonable basis for concluding that [the violator's] conduct might be lawful." *See id.* at 1799.

Although the court's analysis in its oral ruling did not focus on

§ 362(k), its findings establish that Precision harbored the mental state required under § 362(k). The bankruptcy court must have found, even if only implicitly, that Precision's "actions in violation of the stay were intentional." *Eskanos & Adler, P.C.*, 309 F.3d at 1215.

Accordingly, § 362(k) required the bankruptcy court to award "actual damages, including costs and attorneys' fees . . . ." "Only an award of fees reasonably incurred is mandated by the statute; courts awarding fees under § 362(k) thus retain the discretion to eliminate unnecessary or plainly excessive fees." *In re Schwartz-Tallard*, 803 F.3d at 1101.

In its written order, the court explained that it was allowing "actual damages incurred by [Ms. Medley] in the form of her attorney's fees and costs in the amount of $20,000." In its oral comments, the court stated that it had reviewed the requested fees, considered Precision's objections, identified improper billing entries that would warrant minor reductions, and ultimately determined that the reasonable total fees exceeded the $20,000 cap. This explanation is adequate. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (holding that the explanation of a fee award "need not be elaborate, but it must be comprehensible").[8]

---

[8] Precision argues that the bankruptcy court erred by ignoring Ms. Medley's abuse of the bankruptcy system. But the bankruptcy court did consider Ms. Medley's conduct and rightly concluded that it did not change her entitlement to the automatic stay or Precision's violation of the stay. Precision also argues that the bankruptcy court should have considered Ms. Medley's failure to mitigate her damages. But the bankruptcy court reviewed the fees and concluded that the award was reasonable.

Considering that Ms. Medley had requested about $26,000 of fees, and the litigation against Precision included a full-day trial, the court did not commit clear error when it found that Ms. Medley's reasonable attorneys' fees were $20,000.

It is true that, in its oral ruling, the court referred to divergent legal grounds for the amount of its award, and some of those reasons would have been erroneous. For example, the court repeatedly suggested that it wished to punish Precision or deter it from similar conduct in future cases. But the court did not expressly or implicitly make the findings that would support an award of punitive damages under § 362(k). Elsewhere, the court said that Precision could "purge its contempt" by paying the $20,000 sanction. This suggests that the court may have thought that it could justify the $20,000 award as a coercive sanction. But § 362(k) does not mention coercive sanctions and, in any event, a flat, nonreducible fine cannot be justified as a coercive measure.

On appeal, we review the court's final written findings, and we disregard any prior inconsistent oral comments. *See Rawson*, 304 F.2d at 206. The court's award of $20,000 of attorneys' fees under § 362(k) was correct.

## CONCLUSION

The bankruptcy court did not err in holding that the commission was subject to the automatic stay and that Precision violated the stay and in awarding $20,000 as compensation for Ms. Medley's attorneys' fees. We

22

AFFIRM.